UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KERMIT J. STILES, III, | ) | |
| | ) | |
| Petitioner, | ) | 1:10-cv-295/1:06-cr-140 |
| | ) | |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

*Pro se* Petitioner Kermit Stiles filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 402) on October 26, 2010. Petitioner contends he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. The Government opposes Petitioner's § 2255 motion (Court File No. 419). The motion, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), and Petitioner's § 2255 motion[1] will be **DENIED** for lack of merit (Court File No. 402).

---

[1] In accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion filed herein, and all the files, records, transcripts, and correspondence relating to Stiles' conviction in Criminal Docket No. 1:06-cr-140, which will be cited by the Court File Number assigned to the particular pleading or motion (e.g., "Court File No. 402, Petition.").

I. **RELEVANT FACTS AND PROCEDURAL HISTORY**

Petitioner, along with a number of other defendants, was charged on December 12, 2006, in a thirteen-count indictment with numerous violations of the federal drug laws. Petitioner retained attorney Leonard Mike Caputo to represent him; Caputo appeared on Petitioner's behalf on December 18, 2006 (Court File No. 9). On February 20, 2007, attorney John C. Cavett, Jr. entered an appearance as Petitioner's retained counsel (Court File No. 118). Mr. Caputo was relieved as counsel. On April 11, 2007, a notice of rearraignment was filed by U.S. Magistrate Judge William B. Mitchell Carter setting Petitioner's guilty plea hearing for April 30, 2007 (Court File No. 146). A notice pursuant to 21 U.S.C. § 851 was filed by the Government advising Petitioner of the Government's intent to enhance Petitioner's sentence based upon his prior convictions (Court File No. 161). On April 30, 2007, Petitioner appeared before Magistrate Judge Carter and entered a plea of guilty to conspiracy to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B), a lesser included offense of the conspiracy charged in the first count of the indictment (Court File No. 167). Petitioner's guilty plea was the result of a plea agreement between him and the Government (Court File No. 173). In paragraph 4 of the plea agreement Petitioner agreed and stipulated to the following facts:

> a) The defendant became involved in a conspiracy which lasted from January 2004 and continued through April 6, 2006, and included co-defendants Cory Winston, Tommy Phillips, Cedric Vance, Sidney Petty, Ithornial Maffett, Marcus Carlisle, Kelvin Lloyd, Cleveland Bell, III, Robert Phillips, Jr., Charles Jerome Jones, Varian Lashon Ford, Anthony Flemister and others to distribute 500 grams or more of cocaine hydrochloride, a Schedule II controlled substance. The defendant knowingly and intentionally joined the conspiracy and committed overt acts in furtherance of the conspiracy.
>
> b) Beginning in August 2005, investigators with the Tennessee Bureau of Investigation and the Hamilton County Sheriff's Department began investigating the drug trafficking organization led by Cory Winston and Tommy Phillips. During the

2

course of the investigation, a Confidential Informant (CI) was used to conduct controlled calls ordering cocaine hydrochloride from Winston and marijuana from Phillips which resulted in the CI purchasing four pounds of marijuana from Phillips.

c) A wiretap investigation followed and numerous calls were intercepted from members of the conspiracy discussing their illegal trafficking in controlled substances in quantities exceeding five hundred grams of cocaine hydrochloride.

d) Between March 13 and 15, 2006, monitors intercepted a series of phone calls between Winston, Stiles, Ithornial Maffett and Sidney Petty in which the suspects discussed cocaine deals.

e) On March 14, 2006 monitors intercepted phone calls between Winston, Maffett, Stiles, and Sidney Petty. Stiles spoke only with Winston and not with Maffett or Petty. Stiles was not a party to any conversation about cutting or cooking cocaine. A meeting between Winston and Stiles was arranged at Winston's residence. Agents surveilled the meeting and observed Stiles arrive and leave shortly thereafter. A traffic stop was initiated on Stiles, and he was discovered to be in possession of approximately thirteen (13) ounces of cocaine and $3,000. Stiles was interviewed and confessed to acquiring thirteen ounces of cocaine for $5,000. Stiles admitted to having a stash house for his cocaine and took agents to that location, consenting to the search. This stash house was known to investigating agents as a stash house for this drug distribution organization. Agents seized approximately $44,500 cash, scales, spoons with cocaine residue, and approximately 3.2 ounces of cocaine. Stiles had no knowledge that the cash, scales, spoons or cocaine was there. Stiles also gave consent to search his residence, wherein agents seized another $45,640 cash, documentation showing a bank account containing $88,000.

f) The United States' proof at trial would show that the defendant was responsible for approximately at least four (4) kilograms of cocaine hydrochloride.

g) Many of the above-described events occurred in the Eastern District of Tennessee.

After his guilty plea was accepted, the Court ordered that a Presentence Investigative Report ("PSR") be prepared by the United States Probation Department. On August 9, 2007, the Court held Petitioner's sentencing hearing. After hearing from Petitioner, his counsel and the Government, the Court imposed a sentence of 262 months imprisonment, which was at the bottom of the United States Sentencing Guidelines range for Petitioner (Court File No. 249). Petitioner's guideline range was determined by his classification as a career offender. Following his sentencing, Petitioner

3

appealed the sentence to the United States Court of Appeals for the Sixth Circuit. That court affirmed Petitioner's sentence (Court File No. 382).

Petitioner now seeks to have his sentence vacated based upon his argument his retained counsel, Mr. Cavett, rendered ineffective assistance of counsel. Petitioner claims he provided substantial assistance to the Government but the Government failed in violation of promises he had received to move for a downward departure. Petitioner faults Mr. Cavett for not objecting at the sentencing hearing to this failure and also for failing to raise this claim in the direct appeal of his sentence. Petitioner also claims his sentence was grossly disproportionate to the sentences received by his co-conspirators and Mr. Cavett was ineffective in failing to object to the disparity.

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, on the grounds

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III. DISCUSSION

Petitioner alleges he received ineffective assistance of counsel during his prosecution in violation of the Sixth Amendment. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

> defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not

become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

When, as here, the petitioner alleges ineffective assistance of counsel in a plea proceeding, the movant must show, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995) ("[Petitioner] alleged in his petition that he would not have pleaded guilty but would have insisted upon going to trial . . . . However, this bare allegation is not sufficient to establish prejudice."); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient).

In this § 2255 proceeding, Stiles has the burden of establishing his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges two grounds on which he claims his counsel was constitutionally defective. The Court will consider each ground in turn.

> **A. Counsel rendered ineffective assistance by failing to argue at sentencing and on appeal that the United States acted in "bad faith" by refusing to file a downward departure motion for his alleged assistance to law enforcement authorities.**

According to Petitioner, he "upon being arrested, immediately cooperated with law enforcement extensively. His first cooperation lead law enforcement to a 'safe-house' where a large amount of U.S. currency was seized, as well as other evidence of criminal activities" (Court File No. 403, Memorandum in Support of Petition at 5). As a result of his assistance to the Government, according to Petitioner, the Government "agreed to make a motion for a downward departure but refused to do so" (*id.*). The Government's failure to live up to its agreement should have prompted his appointed counsel to "argue that the government's refusal was motivated by 'bad-faith'" (*id.*). Instead of making this argument, however, his counsel merely "accused the particular Assistant U.S. Attorney handling [Petitioner's] case for the failure to file the reduction (downward-departure) motion" (*id.*). Petitioner's counsel simply "pointed out at the sentencing hearing that [Petitioner] had cooperated and that the court should consider it in imposing sentence" (*id.*). Petitioner argues that had his counsel made the bad-faith argument "there exists a reasonable probability that the government would not have acted in 'bad-faith' in refusing to file a downward-departure motion in [Petitioner's] case"(*id.* at 6).

In its response the Government points out that in the plea agreement it never agreed to file a downward departure motion on Petitioner's behalf. A review of the plea agreement supports the Government's contention. Several paragraphs of the plea agreement discuss Petitioner's cooperation. Paragraphs six and seven require Petitioner's full and complete cooperation. Paragraph eight calls for the Government to bring to the Court's attention the nature, extent, and value of Petitioner's cooperation at the time of sentencing so that the cooperation may be considered in determining Petitioner's sentence. Paragraph 11 states that no promises have been made by the Government as to Petitioner's sentence and that his sentence will be determined by the Court.

8

Finally, paragraph 14, the last paragraph of the agreement, states that the agreement is the full and complete agreement between the parties and that there are no other agreements or understandings between the parties. This paragraph goes on to state that the terms of the agreement can only be modified in writing signed by all parties (Court File No. 173).

The Plea Agreement therefore clearly rebuts Petitioner's claim the Government agreed to make a motion for a downward departure. There is nothing in the Plea Agreement that supports Petitioner's claim and in fact it contradicts that claim. Therefore Petitioner has failed to provide any factual support for this claim. Since the Government was under no obligation to file a motion for a downward departure it would have been futile and fruitless for Petitioner's counsel to file a motion objecting to the Government not doing what it had no obligation to do. Counsel cannot be ineffective for not filing a futile motion. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be constitutionally ineffective for failing to raise . . . meritless arguments").

Petitioner alleges the Government acted in bad faith in failing to file the motion for a downward departure. In response the Government states:

> [T]he United States noted that two law enforcement witnesses were prepared to testify that, when petitioner was arrested, he initially lied to the agents. Only after the agents confronted him with some of the evidence of his guilt did petitioner "begrudgingly" tell the truth. In addition, although petitioner had promised that he could assist the government in locating two other individuals, petitioner did not provide any specific information resulting in their location. Petitioner's failure to be truthful initially (which undermined his credibility as a witness), his begrudging cooperation, and his lack of specific information, as well as the sentencing benefit that petitioner already had received by virtue of the plea, were facts underlying the United States' decision not to file a departure motion based upon substantial assistance. (citations omitted)

(Court File No. 419 at 5).

This same representation was made by the Government at the sentencing hearing (Court File No. 316 at 21-22). Not only was no evidence offered that the Government's refusal to file a

downward departure motion was for unconstitutional reasons, no argument in that regard was even offered. Even in his Petition, Stiles fails to argue the refusal was based on unconstitutional grounds.

For these same reasons, Petitioner cannot prevail on his argument his counsel was deficient in failing to raise this argument in his direct appeal. Counsel was under no obligation to raise frivolous matters on appeal. Counsel recognized the futility of making this argument and chose to pursue arguments that offered a greater chance of success. For that he cannot be faulted. "[T]he process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting that a criminal defendant has the right and ultimate authority to decide whether to appeal, but, once he elects to do so, the decision of which issues to raise on appeal rests with counsel, who is better suited to estimate the probability of success); *Coleman v. Mitchell*, 268 F.2d 417, 430-31 (6th Cir. 2001) (holding that counsel cannot be deemed ineffective for refusing to litigate every conceivable issue).

Petitioner cannot establish ineffective assistance of counsel due to counsel's failure to file a motion objecting to the Government's refusal to file a motion for a downward departure because such a motion would not have been based upon any legal authority and such a motion would have been futile. Petitioner cannot establish ineffective assistance of counsel due to counsel's failure to pursue this issue on appeal. Therefore he cannot establish prejudice from counsel's inaction. Petitioner's § 2255 motion will be **DENIED** on this ground.

> **B.** **Counsel rendered ineffective assistance by failing to argue Petitioner's sentence was "grossly disproportionate" as compared to the sentences received by his co-defendants.**

In his second claim, Petitioner argues his sentence was grossly disproportionate to the sentences his co-conspirators received. According to Petitioner he immediately cooperated, his cooperation led to a large sum of money and other illegal fruits, all of the other conspirators were more culpable in the offense than he was, his involvement was peripheral, he was only a small time buyer/seller, he became involved in the conspiracy later in its existence, and his co-conspirators received significantly lower sentences. He concludes his argument requesting a sentence of ten years, the statutory minimum sentence (Court File No. 403 at 11-13).

Petitioner's sentence may or may not have been greater than the sentences of his co-conspirators. However, Petitioner's sentence was determined in large part because he had three prior felony drug convictions (Court File No. 316 at 25). Petitioner qualified as a career offender and it was Congress' intent for career offenders to receive sentences at or near the statutory maximum. Petitioner's statutory maximum was life imprisonment.

In considering disproportionality it is important to compare defendants in similar circumstances. Therefore, for Petitioner's argument to be accepted one must compare his sentence to co-conspirators that have three prior felony drug convictions and were also classified as career offenders. The Court knows of no such co-conspirators and Petitioner offers the Court no such co-conspirator that fits that description. Petitioner's argument therefore fails on this ground.

Moreover, Petitioner's effort to compare himself to his co-conspirators does not provide a legal rationale for relief. The point of the statute, 18 U.S.C. § 3553(a)(6) is to provide for national uniformity in sentencing, not to dictate uniformity between co-defendants. *United States v. Thompson,* 218 F. App'x 413, 417 (6th Cir. 2007) ("reduc[ing] a sentence because of a perceived disparity between the sentences of one defendant and that of his co-defendant in the same case

creates a new and unwarranted disparity between that first defendant's sentence and the sentences of all the defendants nationwide who are similarly situated"). It would be pointless to ignore Petitioner's prior felony drug convictions and the fact he is a career criminal and attempt to impose a sentence at or below the sentences of his co-defendants with much lesser criminal histories. Petitioner received a sentence within his Guidelines range and that demonstrates that his sentence was not disparate and was not disproportionate.

Petitioner cannot establish ineffective assistance of counsel due to counsel's failure to argue his sentence was grossly disproportionate. Accordingly, Petitioner's § 2255 motion on this ground will be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's sentence was not imposed in violation of the Constitution or laws of the United States and is not otherwise subject to collateral attack. Therefore, the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 402).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**